1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  LAPREA PATTIO,                        )    NO. SACV 09-00717-SS
                                          )
12                  Plaintiff,            )
                                          )
13              v.                        )    **MEMORANDUM DECISION AND ORDER**
                                          )
14  MICHAEL J. ASTRUE,                    )
    Commissioner of the Social            )
15  Security Administration,              )
                                          )
16                  Defendant.            )
    _____)

17

18      Plaintiff Laprea Pattio ("Plaintiff") brings this action seeking to

19  overturn the decision of the Commissioner of the Social Security

20  Administration (hereinafter "Defendant," "Commissioner," or the

21  "Agency") denying her application for Supplemental Security Income

22  ("SSI") benefits.  Alternatively, she asks for a remand.  The parties

23  consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the

24  undersigned United States Magistrate Judge.  The parties filed a Joint

25  Stipulation ("JS"), pursuant to this Court's Case Management Order, in

26  support of their respective positions.  For the reasons stated below,

27  the decision of the Commissioner is AFFIRMED.

28

**PROCEDURAL HISTORY**

Plaintiff has filed eight applications for SSI disability benefits under Title XVI of the Social Security Act since 1990,[1] including the application at issue herein. (Administrative Record ("AR") 10). All were denied. (Id.).

On February 18, 2004, Plaintiff filed her seventh application for SSI disability benefits on the basis of asthma, back pain, obesity, hypertension, and heart problems. (AR 62). She alleged a disability onset of February 18, 2004. (Id.). The Agency denied Plaintiff's claim for benefits. (AR 61). Upon Plaintiff's request, on May 25, 2005, a hearing was held before Administrative Law Judge ("ALJ") Robert A. Evans, who issued an unfavorable decision on November 30, 2005. (AR 61-67). This decision became the final decision of the Commissioner.

On June 7, 2006, Plaintiff filed the current application for SSI disability benefits.[2] (AR 10, 112). She alleged a disability onset date of December 9, 2003 and listed arthritis, asthma and back and leg pain as the bases on her Disability Report. (AR 119). The Agency denied Plaintiff's initial application for benefits. (AR 75). On February 12, 2008, ALJ Edward C. Graham conducted a hearing at which Plaintiff

---

[1] Title XVI of the Social Security Act is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for Aged, Blind, and Disabled").

[2] Although the Application Summary for SSI states that Plaintiff applied for SSI benefits on June 13, 2006, the Disability Report states that the protective filing date is June 7, 2006. (AR 104-09, 112).

1  appeared with counsel and testified.  (AR 30-57).  A vocational expert
2  also testified.  (AR 49-51).

3

4      ALJ Graham issued a decision denying benefits on February 22, 2008.
5  (AR 10-17).  Plaintiff sought review of the ALJ's decision before the
6  Appeals Council, which denied review on April 17, 2009, making the ALJ's
7  decision the final decision of the Commissioner.  (AR 1-3).  Plaintiff
8  commenced the instant action on June 16, 2009.

9

10                         **FACTUAL BACKGROUND**

11

12  **A.   <u>Plaintiff's Medical History</u>**

13

14      Plaintiff was born on December 3, 1959 and was 48 at the time of
15  the 2008 hearing.  (AR 71).  She has a high school education.  (AR 62).
16  Her past work experience includes employment as an in-home caregiver,
17  babysitter, and school cafeteria worker.  (AR 125).  Plaintiff stopped
18  working in 2003.  (AR 33, 125).

19

20      Plaintiff's medical history includes treatment records from the
21  Harbor-UCLA Medical Center Pain Clinic ("UCLA") and several clinics run
22  by the County of Los Angeles Department of Health including Long Beach
23  Comprehensive Health Center ("LBCHC") and Coastal Cluster Heath Center
24  ("CCHC") from 2003-2007.  (AR 166-229, 257-373).  The records reference
25  treatment for pain, asthma, obesity and high blood pressure.  (<u>Id.</u>).

26

27      In 2003, Plaintiff sought treatment at CCHC for pain.  (AR  423,
28  435).  Plaintiff mentioned to the CCHC treating physicians that she had

                                    3

1 chronic pain in the shoulder and leg.  (AR 423).  The records indicate
2 that in 2003, the only medication Plaintiff reported to CCHC that she
3 was taking to alleviate her pain was Tylenol.  (AR 435).

5      From as early as 2004, Plaintiff sought treatment at LBCHC, where
6 her primary physician was located.  (See, e.g., AR 261, 281, 316, 394).
7 Plaintiff routinely sought treatment for her asthma.  (See, e.g., AR
8 261, 264, 278).  The LBCHC records note that Plaintiff had moderately
9 severe asthma.  (AR 278).  During that time period, Plaintiff reported
10 on several occasions that she experienced no pain.  (See, e.g., AR 278,
11 281, 286, 332).

13      In 2004, Plaintiff began seeking treatment for her pain at UCLA,
14 where she had several treating physicians.  (See, e.g., AR 340, 343,
15 347).  The UCLA records indicate that Plaintiff had chronic pain, high
16 blood pressure and was obese.  (See, e.g., AR 330, 360).  To treat the
17 chronic pain, the UCLA physicians prescribed a variety of pain
18 medications including Vicodin and Neurontin.  (See, e.g., AR 337, 340,
19 342).  The record indicates that despite the chronic pain, Plaintiff, on
20 numerous occasions, identified her activity level as either three or
21 four on a scale of zero to five.  (See, e.g., AR 326, 330, 340).  UCLA
22 also monitored Plaintiff's hypertension and by May 2006, Dr. Hsu of UCLA
23 noted that Plaintiff's hypertension was well controlled.  (AR 343).

25      The UCLA records indicate that Plaintiff first mentioned she was
26 depressed in September 2005 and then regularly throughout 2006.  (See AR
27 340, 342, 352).  In December 2005, Dr. Baldwin of UCLA referred
28 Plaintiff to Long Beach Mental Health after Plaintiff stated that she

1  was severely depressed and desired "mental health help."  (AR 348).
2  Nonetheless, the record does not contain any evidence that Plaintiff
3  sought treatment for depression or any other mental health condition.

4

5      **B.   Consultative Examinations**

6

7      Plaintiff underwent several consultative examinations in connection
8  with her two most recent applications for benefits.  On July 15, 2005,
9  Dr. Concepcion A. Enriquez conducted a consultative examination of
10 Plaintiff and found that Plaintiff had expiratory wheezes, a 5/5 motor
11 power on all extremities and normal sensory and reflex functions.  (AR
12 63-64).  Dr. Enriquez noted that there were discrepancies between
13 Plaintiff statements and her medical records.  (Id.).  For example,
14 Plaintiff claimed that she was hospitalized for asthma in January or
15 February 2005, but the records did not show she was hospitalized.
16 (Id.).  Dr. Enriquez concluded that, with certain limitations, Plaintiff
17 could lift and carry twenty pounds occasionally and ten pounds
18 frequently, stand and/or walk for six hours out of an eight-hour work
19 day, and sit for six hours out of an eight-hour work day.  (AR 64).

20

21     On August 11, 2006, Dr. Enriquez performed a second consultative
22 examination of Plaintiff.[3]  (AR 160-64).  Plaintiff's blood pressure was
23 116/74 and well controlled.  (AR 161, 163).  Plaintiff had expiratory
24 wheezes, but normal excursion with respiration.  (AR 163).  Plaintiff
25 had a decreased range of motion of her lumbar spine and signs of

26

27 ─────────────
28     [3]  The ALJ decision incorrectly states that Dr. Enriquez conducted
   the consultative examination on September 11, 2006.  (AR 14-15).

5

radiculopathy, but was "able to walk unassisted." (Id.). Plaintiff also had a motor power of 5/5 and normal range on her extremities. (AR 162-63). Dr. Enriquez reached the same conclusions as in the first consultative examination, finding that Plaintiff, with certain limitations, can occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (AR 163).

On October 24, 2006, Dr. Arthur J. Edelstein completed an ophthalmological examination and found that with glasses, Plaintiff would have a visual acuity of 20/30. (AR 239).

Dr. E.L. Gilpeer, the State Agency physician, conducted assessments of Plaintiff's residual functional capacity ("RFC") on September 8, 2006 and November 27, 2006, and found that Plaintiff had some limitations. (AR 230-35, 246-51). Both assessments concluded that Plaintiff could engage in overhead reaching frequently and climb, balance, stoop, kneel, crouch and crawl occasionally. (Id.). Dr. Gilpeer adopted the RFC findings by ALJ Evans in his November 30, 2005 decision. (AR 235, 251).

C.   **Plaintiff's Testimony**

At the 2005 hearing, Plaintiff testified that she could not perform any of her previous jobs due to the lifting required, as well as her back and her breathing difficulties. (AR 22-23). She stated that in the previous six months, she went to LBCHC "seven or eight times" to seek treatment for asthma. (AR 23-24).

6

At the 2008 hearing, Plaintiff testified that her asthma, pain, high blood pressure and depression prevented her from working. (AR 34, 39-41). Plaintiff also testified that she was diagnosed with osteoarthritis and that she experienced pain all over her body, particularly her right side. (AR 34-36). In addition, she stated that "disc disease" caused her pain in the lower back and spine. (AR 38). Plaintiff later testified that she suffered from depression because she could not work. (AR 41).

Regarding Plaintiff's activity level, Plaintiff testified that she could not lift anything (AR 44), could stand for only five to ten minutes at a time (AR 44-45), could only sit for about fifteen to twenty minutes at a time (AR 45) and could not perform household chores such as cooking and cleaning (AR 48). Plaintiff testified that she could drive to the grocery store, doctors' offices and her therapy sessions. (AR 46-47).

D.   **Vocational Expert's Testimony**

Sandra Schneider testified at the 2005 hearing as a vocational expert. Following the ALJ's hypothetical – which included the opinions of the consultative and State Agency physicians of Plaintiff's limitations – Ms. Schneider testified that such an individual could perform the work of a food service worker. (AR 25-26). That hypothetical person, however, could not perform the work of a food service worker if she had to take at least three unscheduled breaks of approximately twenty to thirty minutes in length each day. (AR 26).

1    Alan E. Cummings testified at the 2008 hearing as a vocational
2  expert.  Following the ALJ's hypothetical – which included the opinions
3  of the consultative and State Agency physicians of Plaintiff's
4  limitations – Mr. Cummings testified that such an individual could
5  perform certain jobs, including work as a packager, inspector, sorter,
6  or assembler.  (AR 50-51).  Mr. Cummings stated that there were 25,000
7  of these jobs regionally.  (AR 50-51).

8
9                **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**
10

11   To qualify for disability benefits, a claimant must demonstrate  a
12 medically determinable physical or mental impairment that prevents him
13 from engaging in substantial gainful activity[4] and that is expected to
14 result in death or to last for a continuous period of at least twelve
15 months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42
16 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant
17 incapable of performing the work he previously performed and incapable
18 of performing any other substantial gainful employment that exists in
19 the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
20 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

21
22   To decide if a claimant is entitled to benefits, an ALJ conducts a
23 five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:
24
25
26 _____

27    [4]   Substantial gainful activity means work that involves doing
   significant and productive physical or mental duties and is done for pay
28 or profit.  20 C.F.R. §§ 404.1510, 416.910.

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098-99); 20 C.F.R. §§ 404.1520(b)- 404.1520(g)(1) & 416.920(b) - 416.920(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett,180 F.3d at 1098). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record

1  at every step of the inquiry. Id. at 954. If, at step four, the

2  claimant meets his burden of establishing an inability to perform past

3  work, the Commissioner must show that the claimant can perform some

4  other work that exists in "significant numbers" in the national economy,

5  taking into account the claimant's residual functional capacity,[5] age,

6  education, and work experience. Tackett, 180 F.3d at 1098, 1100;

7  Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

8  The Commissioner may do so by the testimony of a vocational expert or by

9  reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.

10 Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

11 Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett,

12 180 F.3d at 1100-01). When a claimant has both exertional (strength-

13 related) and nonexertional limitations, the Grids are inapplicable and

14 the ALJ must take the testimony of a vocational expert. Moore v. Apfel,

15 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d

16 1335, 1340 (9th Cir. 1988)).

17

18                          **THE ALJ'S DECISION**

19

20      ALJ Graham found that Plaintiff was not disabled within the meaning

21 of the Social Security Act. (AR 17). At the first step of the

22 evaluation process, the ALJ observed that Plaintiff had not engaged in

23 substantial gainful activity since the application date, June 7, 2006.

24 (AR 12). The ALJ also observed that Plaintiff had only performed

25 substantial gainful activity in only one year of her life, that

26 _____

27      [5]  Residual functional capacity is what one "can still do despite
   [his] limitations" and represents an assessment "based on all the
28 relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1  Plaintiff stopped working in April 2003 when she was "laid off," and
2  that her lack of work was "more consistent with a chosen lifestyle than
3  with any purported disability." (AR 13).  At steps two and three, the
4  ALJ found that the impairments of asthma, lumbar spine degenerative disc
5  disease, obesity and limited visual acuity were severe, but the alleged
6  arthritis was not a medically determinable impairment (due to the
7  absence of any medical evidence to show that Plaintiff suffered from
8  this condition) and the hypertension was not severe. (Id.).  None of
9  the severe impairments met or equaled the Listing. (Id.).

10

11     Next, the ALJ weighed the testimonies and evidence in the medical
12  records to determine Plaintiff's RFC. (AR 14-16).  Having found that
13  Plaintiff's testimony "concerning the intensity, persistence and
14  limiting effects" of her symptoms were not credible to the extent that
15  they were inconsistent with the RFC assessment, the ALJ subsequently
16  concluded that Plaintiff retained the capacity "to perform light work as
17  defined in 20 CFR § 416.967(b) that would require occasional climbing,
18  balancing, stooping, kneeling, crouching and crawling" but "not expose
19  her to fumes, odors, dusts, gases, and poor ventilation" or require fine
20  visual acuity. (AR 14).  Plaintiff's previous position as a cafeteria
21  worker was a medium, unskilled job, and thus the ALJ found that
22  Plaintiff could not return to her past relevant work given her
23  limitations. (AR 16).  However, having considered Plaintiff's RFC as
24  well as the testimony of the vocational expert, the ALJ concluded that
25  Plaintiff retained the ability to perform work existing in significant
26  numbers in the national economy, including work as a packager or an
27  inspector. (AR 16-17).  Consequently, the ALJ found that Plaintiff was
28

11

1  not disabled within the meaning of the Act since the date the
2  application was filed.  (AR 17).

3
4                        **STANDARD OF REVIEW**

5
6      Under 42 U.S.C. § 405(g), a district court may review the
7  Commissioner's decision to deny benefits.  The court may set aside the
8  Commissioner's decision when the ALJ's findings are based on legal error
9  or are not supported by substantial evidence in the record as a whole.
10 Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing
11 Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th
12 Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

13
14     "Substantial evidence is more than a scintilla, but less than a
15 preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater,
16 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a
17 reasonable person might accept as adequate to support a conclusion."
18 Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To
19 determine whether substantial evidence supports a finding, the court
20 must "'consider the record as a whole, weighing both evidence that
21 supports and evidence that detracts from the [Commissioner's]
22 conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2
23 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support
24 either affirming or reversing that conclusion, the court may not
25 substitute its judgment for that of the Commissioner. Reddick, 157 F.3d
26 at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

27
28

                                  12

1                          **DISCUSSION**

2

3      Plaintiff contends that: (1) the ALJ erred in determining that
4 Plaintiff's hypertension was not severe; (2) the ALJ failed to properly
5 consider Plaintiff's obesity; (3) the ALJ failed to adequately evaluate
6 whether Plaintiff's impairments met or equaled Listing 1.04A; (4) the
7 ALJ failed to develop a record regarding Plaintiff's mental impairment;
8 (5) the ALJ erred in finding Plaintiff's testimony not credible; and (6)
9 the ALJ did not properly consider the State Agency's findings.  (JS at
10 2-3).  The Court disagrees with Plaintiff's contentions.

11

12   **A.   Plaintiff Failed To Demonstrate That Her Hypertension Was A**
13          **Changed Circumstance That Rebutted The Presumption Of**
14          **Continuing Nondisability**

15

16      Plaintiff contends that the ALJ erred by failing to find her
17 hypertension severe.  (JS at 5).  Plaintiff claims that her
18 hypertension, "in combination with her other impairments, has more than
19 a minimal affect [sic] on her ability to perform basic work activities."
20 (Id.).

21

22      Prior to the current SSI application, Plaintiff filed seven
23 applications for benefits, all of which were denied.  (AR 10).  The
24 immediately prior SSI application, filed February 18, 2004, was based on
25 the same impairments alleged in the current application.[6]  (AR 11).  In

26 _____

27      [6]  Although Plaintiff listed arthritis on her current application,
the ALJ determined that it was "not a medically determinable impairment"
28 because there was no evidence of a diagnosis in the record nor had

                                  13

1   both of these instances, the ALJs found Plaintiff not disabled.  (AR 17,
2   67).  Moreover, the Court notes that ALJ Graham specifically limited his
3   decision to the time period from June 7, 2006, the date the current
4   application was filed, to the date of the hearing.  (AR 10).

5

6       When a claimant reapplies for benefits, prior findings of
7   nondisability create a presumption of continuing nondisability.
8   Plaintiff may overcome this presumption, however, by showing that
9   circumstances have changed since her last denial, subsequently
10  increasing the severity of her impairment.  Chavez v. Bowen, 844 F.2d
11  691, 693 (9th Cir. 1988) (citing Taylor v. Heckler, 765 F.2d 872, 875
12  (9th Cir. 1985)); see also Lester v. Chater, 81 F.3d 821, 827 (9th Cir.
13  1995) (as amended) (explaining that a change in circumstances may
14  override a presumption of nondisability).  A plaintiff may then
15  demonstrate that new conditions warrant reconsideration of her
16  application.

17

18      In this case, Plaintiff failed to demonstrate that her hypertension
19  worsened since the November 2005 decision.  The only post-November 2005
20  evidence Plaintiff pointed to were a few instances where her blood
21  pressure exceeded 140/90.  (JS at 4; AR 264, 330).  A few instances of
22  high blood pressure, however, are not evidence of a "changed

23  ─────────────────────

24  Plaintiff received any treatment for this condition.  (AR 13).
    Plaintiff did not appeal this finding.  Plaintiff did not list limited
25  visual acuity as a basis for the application but the ALJ determined that
    the evidence submitted shows that it was an additional limitation.  (AR
26  11).  However, the ALJ also found that she received no treatment for
    this condition and that Plaintiff "evidently feigned restricted visual
27  fields at the internal consultative examination; [ ]when examined by the
    ophthalmologist, her visual fields were full."  (AR 13).
28

14

1  circumstance" that increased the severity of Plaintiff's impairment or
2  that rebuts the presumption of non-disability.

3

4      To the contrary, the evidence shows that Plaintiff's hypertension
5  was well-controlled by medication.  (AR 13).  See Warre v. Comm'r, 439
6  F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled
7  effectively with medication are not disabling for the purpose of
8  determining eligibility for SSI benefits.")  Plaintiff was diagnosed
9  with hypertension in 2002.  (AR 160).  Plaintiff's medical records show
10 that beginning in 2006, Plaintiff's blood pressure was routinely below
11 140/90.  (See, e.g., AR 261, 276, 340, 343).  Two different physicians,
12 on separate occasions, concluded that Plaitniff's hypertension was well-
13 controlled on medication.  (AR 161-52, 343).  On May 4, 2006, one of
14 Plaintiff's treating physicians at UCLA noted that Plaintiff's
15 hypertension was "well-controlled."  (AR 343).  On August 11, 2006,
16 during the Internal Medicine Consultative Examination, Plaintiff had a
17 blood pressure reading of 116/74, which Dr. Concepcion also found well-
18 controlled.  (AR 14, 161-62).  The ALJ noted that Plaintiff had no end
19 organ damage and never had a stroke, myocardial infarction or symptoms
20 thereof.  (AR 13).  The ALJ then concluded that Plaintiff's hypertension
21 "does not impose any limitations upon [her] ability to perform basic
22 work-related activities."  (Id.).  As such, Plaintiff has failed to
23 demonstrate that her hypertension has become more severe since the prior
24 decision.  Plaintiff has not overcome the presumption of nondisability.

25

26     Further, although the Court agrees with Plaintiff's contention that
27 the ALJ erred when he determined that Plaintiff's hypertension was non-
28 severe, the error was harmless.  (JS at 4-5).  A severe impairment is

one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  <u>Smolen</u>, 80 F.3d at 1290 (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 2297-98 (1987)).  An ALJ's decision, however, will not be reversed for incorrectly finding an impairment non-severe if the error was harmless.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

Here, the ALJ applied more than a <u>de</u> <u>minimis</u> test when he determined that Plaintiff's hypertension was not severe.  The ALJ's error, however, was harmless because even if the Court had found Plaintiff's hypertension to be severe, the outcome of Plaintiff's application would have been the same.  <u>See</u> <u>Carmickle v. Comm'r of Social Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008) (if ALJ's decision remains legally valid despite error, then error is harmless).  As discussed <u>supra</u>, substantial evidence shows that Plaintiff's hypertension is well-controlled by medication and thus imposes no limitations upon her ability to work.  (<u>See, e.g.</u>, AR 161-62, 343).  Accordingly, the error was harmless.  The fact that Plaintiff's hypertension is severe neither alters the ALJ's RFC finding nor overcomes the presumption of nondisability.

**B.    Plaintiff Failed To Demonstrate That Her Obesity Constituted A Changed Circumstance That Rebutted The Presumption Of Continuing Nondisability**

Plaintiff argues that the ALJ failed to properly consider the effect of her obesity in combination with her other impairments. (JS at 7-10). Specifically, Plaintiff contends that the ALJ "provided an insufficient analysis regarding Plaintiff's obesity" and the impact it has on her asthma, hypertension, knee pain, and back pain. (JS at 10). The Court disagrees with Plaintiff's contentions.

Obesity is no longer a listed impairment, nor was it at the time of the ALJ's decision. See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria, 64 F.R. 46122 (1999(effective October 25, 1999) ("We are deleting listing 9.09, "Obesity," from appendix 1, subpart P of part 404, the "Listing of Impairments" (the listings).").  Where there is evidence of obesity, however, the ALJ must determine the effect of the claimant's obesity upon his other impairments, his ability to work and his general health. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003); see also Social Security Ruling 02-01p (requiring an ALJ to consider the effects of obesity at several points in the five-step sequential evaluation).

As discussed supra, when a claimant reapplies for benefits, res judicata applies and there is a presumption of continuing nondisability. Plaintiff failed to overcome the presumption.  Plaintiff failed to demonstrate that her obesity worsened or caused any material change in her other impairments since the 2005 decision.  Plaintiff provided no

new evidence demonstrating any material change in her impairments. Rather, Plaintiff simply refers to circumstances that existed in her prior application, including her pain, her obesity, and her use of walking aids. (JS at 9; AR 32, 35-36, 326). In fact, Plaintiff's weight and impairments were approximately the same as during her prior application. See Chavez, 844 F.2d at 693 (requiring Plaintiff show a changed circumstance indicating a greater disability).

Further, substantial evidence in the record supports the inference that the ALJ properly considered Plaintiff's obesity and rejected it as a basis for disability. First, the ALJ reviewed the medical records from treating doctors that noted Plaintiff's obesity. The treating doctors instructed Plaintiff to lose weight, but did not place any physical restrictions on her. (AR 15; see, e.g., AR 330, 340). The ALJ expressly noted that one treating physician found it difficult to assess Plaintiff's allegations of knee pain "due to her morbid obesity." (AR 15, 333). Second, the ALJ reviewed the Internal Medicine Consultative Examination and State Agency physician's findings, which noted Plaintiff's height and weight as well as her other impairments, and determined that Plaintiff was capable of performing light work with some limitations. (AR 160-164, 230-232). The ALJ specifically stated that he gave consideration to both physicians' opinions. Finally, the ALJ recognized that Plaintiff's obesity "exacerbated her lumbar spine condition to the extent that she can perform only occasional postural activities." (AR 13).

Plaintiff failed to provide any evidence of changed circumstances caused by her obesity and thus has not overcome the presumption of

18

1  nondisability.  Moreover, there is substantial evidence showing that the
2  ALJ properly considered the effect of Plaintiff's obesity and that
3  Plaintiff's obesity did not render her disabled.

4

5          **C.    The ALJ Properly Determined That Plaintiff's Impairments Did**
6                  **Not Equal A Listing**

7

8          Plaintiff contends that the ALJ erred by failing to adequately
9  evaluate whether Plaintiff's impairment met or equaled Listing 1.04A.
10  (JS at 15).  Specifically, Plaintiff argues that the ALJ failed to
11  adequately evaluate the "combined affects [sic] of Plaintiff's combined
12  impairments before determining that Plaintiff's impairments did not
13  medically equal Listing 1.04."  (JS at 17).  The Court disagrees with
14  Plaintiff's contention.

15

16          At the third step of the five-step analysis, the ALJ must determine
17  whether the impairment or combination of impairments meets or equals an
18  impairment in the Listing of Impairments ("Listing") set forth at 20
19  C.F.R. Part 404, Subpart P, Appendix 1.  If so, the claimant is presumed
20  disabled and benefits are awarded.  Bowen v. Acarid, 482 U.S. 137, 141,
21  107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Lester, 81 F.3d at 828.
22  Plaintiff has the burden to show that her condition meets or equals an
23  impairment set forth in the Listing.  Tackett, 180 F.3d at 1098.  To
24  meet a listed impairment, Plaintiff must demonstrate that she meets each
25  characteristic of a listed impairment relevant to her claim and must
26  have every finding specified in the listing.  Id. at 1099; Moncada v.
27  Chater, 60 F.3d 521, 523 (9th Cir. 1995); 20 C.F.R. § 416.925(d).  To
28  equal a listed impairment, Plaintiff must establish "symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." <u>Tacket</u>, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1526).

Again, as noted <u>supra</u>, <u>res judicata</u> created a presumption of nondisability. <u>Chavez</u>, 844 F.2d at 693. At the 2005 hearing, ALJ Evans, after reviewing all of the medical evidence and testimony, found that Plaintiff's impairments did not meet or equal the severity of any Listing. (AR 66). Plaintiff failed to offer any evidence demonstrating that her condition materially changed after the 2005 hearing and thus could not overcome the presumption of nondisability. The only post-November 2005 evidence Plaintiff cites are medical records from her treating physicians indicating muscle weakness and the use of walking aids and Dr. Enriquez's report indicating a decreased range of motion, a positive straight leg raising test and signs of radiculopathy. However, Plaintiff fails to explain how these impairments equaled Listing 1.04A. (AR 350; JS at 14-15.). Neither the medical records nor consultative exam findings show new or more severe conditions.

Plaintiff failed to meet her burden to show that her condition met or equaled Listing 1.04A. In fact, Plaintiff admits that her condition does not meet the criteria required for Listing 1.04A.[7] (JS at 17).

---

[7] No treating or examining doctor found that Plaintiff met Listing 1.04A. Although Plaintiff was diagnosed with degenerative disc disease, had some positive straight leg tests, and some limitation of motion, Plaintiff has presented no medical records evidencing the other criteria required for Listing 1.04A. (AR 13). Plaintiff did not provide any evidence of nerve root compression characterized by neuro-anatomic distribution of pain or motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.

1 Plaintiff also neither identified evidence showing that nor explained
2 how her impairments equaled Listing 1.04A. Plaintiff identified
3 evidence of previously existing conditions but such evidence does not
4 show that the combined impairments equal Listing 1.04A. Unless
5 Plaintiff presented evidence of an equivalence or offered a theory, the
6 ALJ was not required to explain his finding and discuss the combined
7 effects of the impairments. See Lewis v. Apfel, 263 F.3d 503, 514 (9th
8 Cir. 2001) (rejecting claimant's argument that the ALJ failed to
9 adequately explain his finding that his impairments did not equal a
10 listing because claimant failed to offer a theory as to how the
11 impairments equaled a listing). As such, Plaintiff failed to satisfy
12 Listing 1.04A and no remand is required.

13

14     **D.    The ALJ Properly Developed The Record**

15

16     Plaintiff contends that the ALJ failed to adequately develop the
17 record by disregarding Plaintiff's self-reported symptoms of depression
18 and "failing to further explore the matter." (JS at 18). Plaintiff
19 argues that the ALJ "could have discharged this duty by ordering a
20 consultative examination or continuing the hearing to obtain any records
21 from Long Beach Mental Health." (Id.).

22

23     The ALJ has an affirmative duty to fully and fairly develop the
24 record, even when the claimant is represented by counsel. Tonapetyan v.
25 Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, only ambiguous
26 evidence or the ALJ's own finding that the record is inadequate to allow
27 for proper evaluation of the evidence triggers the ALJ's duty to conduct
28 an appropriate inquiry and gather additional information. Id.; see

21

1  also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (stating that
2  the duty is not triggered where the ALJ did not make a finding that the
3  medical report was inadequate to make a disability determination).

5      Here, the ALJ's duty to gather additional information was not
6  triggered.  Plaintiff does not contend that any additional evidence
7  establishing that she suffers from depression exists.   Instead,
8  Plaintiff's contention is a conclusory claim that the ALJ failed to
9  develop the record concerning Plaintiff's purported depression. (JS at
10 18-19).  However, there is no medical evidence of an actual diagnosis of
11 depression.  Further, despite the fact that UCLA referred Plaintiff to
12 Long Beach Mental Health upon her own request, Plaintiff's voluminous
13 medical records do not indicate that she ever sought treatment for
14 depression.  (AR 348).  See Burch v. Barnhart, 400 F.3d 676, 681 (9th
15 Cir. 2005) (finding that plaintiff's failure to seek treatment for her
16 back pain was powerful evidence of the degree of pain plaintiff actually
17 experienced).   Plaintiff also did not allege depression in her
18 disability reports or tell the consultative examiner that she suffered
19 from depression.[8]

21     Accordingly, the ALJ had no duty to gather additional information
22 because the record was not ambiguous or inadequate to allow for proper
23 evaluation of the evidence.  See Mayes v. Massanari, 276 F.3d 453, 459-

26     [8] The ALJ determined that Plaintiff lacked credibility as discussed
27 infra and thus her statements about depression could be disregarded.
   See Burch, 400 F.3d at 681 (permitting an ALJ to consider lack of
28 treatment for depression in credibility determination).

1  60 (9th Cir. 2001) (finding that the record was not ambiguous or
2  inadequate when substantial evidence supported the ALJ's decision).

3

4      **E.    The ALJ Provided Clear And Convincing Reasons To Reject**
5            **Plaintiff's Credibility**

6

7      Plaintiff contends that the ALJ's "credibility findings lack
8  merit." (JS at 23). Plaintiff claims that the ALJ rejected Plaintiff's
9  testimony without clear and convincing evidence. (JS at 25). The Court
10 disagrees with Plaintiff's contentions.

11

12     To determine whether a claimant's testimony regarding subjective
13 pain or symptoms is credible, an ALJ must engage in a two-step analysis.
14 First, the ALJ must determine whether the claimant has presented
15 objective medical evidence of an underlying impairment "which could
16 reasonably be expected to produce the pain or other symptoms alleged."
17 Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing
18 Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)
19 (internal quotation marks omitted). The claimant, however, "need not
20 show that her impairment could reasonably be expected to cause the
21 severity of the symptom she has alleged; she need only show that it
22 could reasonably have caused some degree of the symptom." Id. (quoting
23 Smolen, 80 F.3d at 1295). Second, if the claimant meets this first
24 test, and there is no evidence of malingering, "the ALJ can reject the
25 claimant's testimony about the severity of her symptoms only by offering
26 specific, clear and convincing reasons for doing so." Smolen, 80 F.3d
27 at 1281.

28

1    At the 2008 hearing, Plaintiff testified that she suffered from
2 osteoarthritis, disc disease, asthma, high blood pressure and
3 depression, all symptoms that limited her ability to work. (AR 35, 38-
4 39, 41).  Plaintiff also experienced problems with swelling.  (AR 40).
5 The osteoarthritis affected all parts of her body, in particular her
6 right side.  (AR 35-36).  Plaintiff testified that, as a result of the
7 pain, she slept only about four hours a night and could only take
8 showers.  (AR 35, 41, 44).  Plaintiff testified that she could stand for
9 only five to ten minutes at a time and when sitting, she had to change
10 positions every fifteen to twenty minutes.  (AR 44-45).  Plaintiff also
11 testified that she stayed home most of the time, but could not do
12 housework such as vacuuming and cooking. (AR 48).  Plaintiff laid down
13 for about ten hours a day and spent most of her day watching television
14 and reading.  (AR 45).  Plaintiff testified that she drove herself to
15 doctor appointments, the grocery store and therapy sessions.  (AR 47-
16 48).

17

18    The ALJ did not err in his assessment of Plaintiff's credibility.
19 The ALJ adopted and incorporated ALJ Evans' "credibility assessment in
20 which he found that Plaintiff's subjective allegations were not
21 supported by, and contradicted by, the objective evidence in the
22 record."  (AR 11).   The ALJ also conducted his own independent
23 assessment of Plaintiff's credibility, citing evidence that suggested
24 malingering and rejecting Plaintiff's testimony with clear and
25 convincing reasons.  See Smolen, 80 F.3d at 1283-84. (stating that ALJ
26 can reject testimony if he provides clear and convincing reasons).

27

28

The ALJ noted that Plaintiff feigned an impairment or condition on more than one occasion. (AR 13, 15). See Thomas, 278 F.3d at 959 (stating that the ALJ's finding that plaintiff lacked credibility due to her "efforts to impede[] accurate testing of her limitations" was compelling). Although Plaintiff alleged visual problems, the consultative ophthalmologist found that her visual acuity, with glasses, was 20/30 in both eyes. (AR 239). The ALJ concluded that Plaintiff evidently feigned restricted vision at the internal medicine consultative examination. (AR 13). The ALJ also determined that Plaintiff feigned lower extremity motor weakness and diminished sensation in 2005 because she had full motor power with normal sensation at her 2006 consultative examination. (AR 15, 162-63). Moreover, in July 2006, a UCLA treating physician observed that Plaintiff was able to walk with a stead gait and sit comfortably. (AR 15, 339).

The ALJ also offered other clear and convincing reasons for rejecting Plaintiff's testimony. The ALJ first pointed to Plaintiff's lack of a work history, finding it more consistent with a "chosen lifestyle" rather than a disability. See Thomas, 278 F.3d at 959 (agreeing with the ALJ's determination that plaintiff's "spotty" work history "negatively affected her credibility regarding her ability to work"). The ALJ next discussed the inconsistencies between Plaintiff's complaints and the medical evidence. (AR 13, 15, 35, 155, 160-74, 329, 332). See Thomas, 278 F.3d at 958-59 (stating that the ALJ may consider inconsistencies when weighing credibility). One inconsistency was Plaintiff's claim that she was diagnosed with rheumatoid arthritis. (AR 13, 35). Plaintiff's medical records do not support her contention; they contain no evidence of diagnosis or treatment for rheumatoid

1  arthritis.[9]   (AR 13, 155).   Another inconsistency was Plaintiff's
2  testimony that she suffered from right hip pain.  (AR 15, 369).  An MRI
3  of her hip was negative.   (Id.).   Plaintiff also alleged pain in her
4  right knee, but an x-ray showed no significant joint space narrowing or
5  osteophytes.  (AR 15, 329).

6

7       Finally, the ALJ concluded that Plaintiff provided contradictory
8  accounts of her smoking and activity level.  Plaintiff told Dr. Enriquez
9  in 2006 that she had not smoked in over seven years, but as ALJ Evans
10 noted, her medical records indicated that she was smoking as of 2005.
11 (AR 14, 64, 160, 420).  As for her activity level, Plaintiff testified
12 that she was incapacitated, laid down for ten hours a day and was unable
13 to stand longer than five to ten minutes at a time or perform housework.
14 (AR 16, 41, 45, 48).  Plaintiff, however, acknowledged that she was able
15 to drive and shop.[10]   (AR 16).

16

17      The record supports an inference of malingering.  Even without the
18 inference, the ALJ provided clear and convincing reasons for rejecting
19 Plaintiff's subjective symptoms.  No remand is required.

20

21

22

23      [9]   The ALJ incorrectly states that there was only one mention of
   rheumatoid arthritis in Plaintiff's medical records.  (AR 13).  There
24 were actually several mentions, including twice when Plaintiff was
   providing a history for her physicians.  (AR 13, 221, 332-33).   On
25 January 29, 2007, Plaintiff's treating physician at UCLA noted that
26 there was "[no] radiographic evidence of arthritis."  (AR 329).

27      [10]  Plaintiff's medical records evidence that throughout 2006, she
   reported activity levels of three to four on a scale of zero to five.
28 (See, e.g., AR 326, 330, 340, 342-43).

**F.   <u>The ALJ Gave Proper Weight To The State Agency's Physician's Findings</u>**

Plaintiff argues that the "ALJ ignored without explanation" the State Agency physician's findings. (JS at 28). Plaintiff is incorrect.

Plaintiff points to 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(I) to support her allegation that the ALJ failed to give proper weight to the State Agency Physician's findings.[11] The regulations state that the administrative law judges are not bound by any findings by a State Agency medical consultant. 20 C.F.R. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I). However, because these State Agency physicians are highly qualified and experts in Social Security disability evaluations, the regulations state that the ALJs "must consider" findings from a State Agency physician. <u>Id.</u> Furthermore, unless the treating physician's opinion is given controlling weight, the administrative law judge "must explain in the decision" weight given to the State Agency physician's opinion, as the ALJ must do for any opinion from a treating source or a nontreating source. 20 C.F.R. § 416.927(f)(2)(ii).

Social Security Ruling ("SSR") 96-6p also states that the findings of fact made by a State Agency physician "must be treated as expert opinion evidence" by the ALJ. An ALJ "may not ignore these opinions and

---

[11]   20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) are identical.

1  must explain the weight given to these in opinions in their decisions."
2  See SSR 96-6p, 1996 WL 374180, *1.

3

4      The ALJ, in considering Plaintiff's residual functional capacity,
5  expressly stated that he gave weight to the opinions of both the
6  consultative examiner, Dr. Enriquez, and State Agency physician, Dr.
7  Gilpeer.   (AR 14-15).   The ALJ first discussed the consultative
8  examination, in which Dr. Enriquez concluded that Plaintiff "could
9  perform work that would require her to lift and carry [twenty] pounds
10 occasionally and [ten] pounds frequently, stand and/or walk for [six]
11 hours of an [eight] hour workday, sit for [six] hours of an [eight] hour
12 workday; occasionally bend, stoop and twist; and avoid extremes of
13 temperature, fumes, odors, gases and poor ventilation." (AR 15).  The
14 ALJ then discussed the opinion of the State Agency physician.  The ALJ
15 noted that Dr. Gilpeer applied Chavez and adopted the RFC determined by
16 ALJ Evans, which was for a "range of light work with occasional postural
17 activities that would not expose her to pulmonary irritants." (AR 15,
18 246-51).   The ALJ concluded that the opinions of Dr. Enriquez and Dr.
19 Gilpeer were consistent and supported by the medical evidence.  (AR 15).

20

21     The ALJ's questioning of the vocational expert during the 2008
22 hearing is another indication that he gave weight to Dr. Gilpeer's
23 opinion.  (AR 54-56).  Although the ALJ did not expressly discuss the
24 overhead reaching limitation that Dr. Gilpeer found – overhead reaching
25 is limited to frequently – the ALJ included that limitation when posing
26 a hypothetical question to the vocational expert.  (AR 50).  Thus, all
27 the jobs listed in the decision could be performed by someone with that
28 limitation.   The ALJ properly considered the State Agency physician's
   findings.

1

2                              **CONCLUSION**

3

4          Consistent with the foregoing, IT IS ORDERED that the decision of

5    the Commissioner is AFFIRMED.  IT IS FURTHER ORDERED that the Clerk of

6    the Court serve copies of this Order and the Judgment herein on counsel

7    for both parties.

8

9    DATED: May 28, 2010                    _____/S/_____
                                            SUZANNE H. SEGAL
10                                          UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28